IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

MUJAHID FARID,

                            Plaintiff,

        v.                                Civil Action No.
                                        9:05-CV-1540 (GLS/DEP)

DAIZZEE BOUEY, *et al.*,

                        Defendants.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

MUJAHID FARID, *pro se*

FOR DEFENDANT:

HON. ANDREW M. CUOMO       ROGER W. KINSEY, ESQ.
Attorney General of the
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     Plaintiff Mujahid Farid, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

against the New York State Board of Parole ("BOP"), its chairperson, and

several of its commissioners alleging the deprivation of rights guaranteed both under the United States Constitution, and by federal statute.  In his complaint, which is refreshingly cogent, plaintiff asserts various claims growing out of his frustration over defendants' persistent refusal to grant him parole despite his eligibility dating back to 1993, arguing that the parole hearings which he is afforded are generally perfunctory in nature and that the resulting parole denials are the product of an impermissible, statewide policy or practice to deny parole to all violent offenders. Additionally, seizing upon reference in his most recent parole denial decision to his "antisocial lifestyle", plaintiff asserts that in not being granted parole he is being discriminated against on the basis of a disability.  Plaintiff's complaint seeks various forms of declaratory, injunctive and monetary relief.

In response to Farid's complaint, defendants have moved seeking dismissal of all or portions of his claims on a variety of grounds including, principally, based upon the preclusive effect of an unfavorable determination entered in a state court proceeding commenced by the plaintiff to challenge his parole denial, additionally arguing, *inter alia*, that because parole is not a right guaranteed to New York State prisoners, no

cognizable constitutional claim is now raised by the plaintiff.  In response to defendants' motion plaintiff has both submitted opposition papers and moved to strike the motion, and has since sought leave to supplement his complaint to add claims related to events occurring after the commencement of this action.  For the reasons set forth below, I recommend that the defendants' motion be granted and plaintiff's complaint be dismissed in its entirety.  Additionally, in light of this disposition, I recommend denial of plaintiff's motions to strike and for leave to supplement his complaint.

I.    BACKGROUND[1]

Plaintiff is and was at the relevant times a prison inmate entrusted to the custody of the New York State Department of Correctional Services

---

[1]    In light of the procedural posture of the case, the following recitation is drawn principally from plaintiff's complaint, Dkt. No. 1, the allegations of which have been credited, for purposes of the instant motion.  *See Erickson v. Pardus*, __U.S. __, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  In formulating my report I have also considered certain other matters of which the court is properly permitted to take notice in ruling upon the pending dismissal motion, notwithstanding plaintiff's assertion to the contrary, including in particular documents pertaining to plaintiff's state court challenge of his April 30, 2003 parole denial.  *See Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, D.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'") (citations omitted), *vacated in part on other grounds and remanded*, 181 Fed. Appx. 11 (2d Cir. 2006) (unpublished disposition).

(the "DOCS").  Complaint (Dkt. No. 1) ¶ 5.  Plaintiff's incarceration stems from a January, 1978 conviction for manslaughter and attempted murder entered in New York State Supreme Court, New York County, following a trial, leading to the imposition of concurrent prison sentences of between eleven and twenty-two years and fifteen years to life, respectively.  *Id.* ¶¶ 17, 21-30.  Plaintiff's conviction results from the shooting death of an individual outside of a New York City bar as well as his attempt, without success owing to an apparent malfunction of his weapon, also to shoot a police officer during the course of the incident.  *Id.*; *see also Farid v. Travis*, 17 A.D.3d 754, 755, 792 N.Y.S.2d 258 (3d Dep't 2005), *appeal dismissed*, 5 N.Y.3d 782, 801 N.Y.S.2d 801 (2005) (Table).

To his credit, over the years since his initial confinement in 1978 Farid has taken many positive measures in an effort to further his rehabilitation and ensure that upon release from prison, he will become a productive member of society.  Complaint (Dkt. No. 1) ¶¶ 32-44.  Among those endeavors are laudable educational accomplishments which include the earning of an associate's degree in business, a dual bachelor's degree in liberal arts/arts and sciences, *cum laude*, and two separate master's degrees in the fields of sociology and ministry.  *Id.* ¶¶ 34-35.  Plaintiff has

4

also engaged in additional studies, acted as an inmate counselor, become

proficient in several areas including signing for the hearing impaired, and

participated in and/or assisted in developing several worthwhile programs

for prison inmates. *Id.* ¶ 37.

_____Although he has been denied parole on several other occasions,

plaintiff's claims in this action, as presently constituted, stem from a parole

hearing held on April 30, 2003 by video conference.[2]   Complaint (Dkt. No.

1) ¶¶ 45-47.   Participating in that hearing were BOP Commissioners

George Johnson, Marietta Gailor, and William Smith, Jr., all of whom are

named as defendants in this action. *Id.* ¶ 18.   At the conclusion of the

hearing plaintiff's request for parole was denied, and the following

statement was given to explain the panel's reasoning:

> Parole is denied.  Given the violence of the instant
> offense, Manslaughter 1st and Murder 1.  [sic]
> Your criminal actions involved you in the course of
> a fight, you drew a gun and shot your victim twice
> in the chest and causing his death. Your criminal
> conduct continued when a police officer intervened
> and commanded you to freeze.  You turned in an
> attempt to fire your weapon in the direction of the
> officer, but the gun did not fire.  Your disregard for
> the law and the consequences of your behavior
> give right [sic] to your unsuitability for community

_____

[2]      According to the plaintiff, he was previously denied parole by the BOP in
1993, 1995, 1997, 1999, and 2001.  Complaint (Dkt. No. 1) ¶ 51.

> release.  Both your programming and disciplinary
> records were reviewed and considered.  However,
> your past conduct was highlighted for violence, and
> indications you are established in an antisocial
> lifestyle, and you remain of concern in the minds of
> this Panel for public safety.

Defendants' Motion (Dkt. No. 32) Exh. 1 at 7; *see also* Complaint (Dkt. No.

1) ¶ 19.

Plaintiff appealed the parole denial decision administratively to the

Bureau of Parole Appeals Unit ("BOPAU").  Complaint (Dkt. No. 1) ¶¶ 56-

57.  That appeal was rejected by the BOPAU in a decision mailed on or

about January 29, 2004, essentially affirming the actions of the BOP

panel.  Complaint (Dkt. No. 1) ¶ 60.

Plaintiff challenged the parole denial resulting from the April 30,

2003 hearing by petition filed in New York State Supreme Court, Albany

County, pursuant to Article 78 of the N.Y. Civil Practice Law and Rules

("CPLR").  *See Farid v. Travis,* Index No. 1332-004 (Albany County

Supreme Ct., filed February 24, 2004); *see* Defendants' Motion (Dkt. No.

32) Exh. 2.  That petition was denied by decision and judgment issued by

Supreme Court Justice Bernard J. Malone, Jr. on June 10, 2004, based

upon the court's finding that the interviewing panel of BOP Commissioners

constituted to address the question of plaintiff's parole "exercised

6

independent discretion" and considered "many of the relevant statutory factors," leading the court to conclude that the parole denial was not the product of "irrationality bordering on impropriety."  Defendants' Motion (Dkt. No. 32) Exh. 3, *slip op.* at 3.  On April 7, 2005 that denial of plaintiff's Article 78 petition was upheld on appeal to the New York State Supreme Court Appellate Division, Third Department, which similarly concluded that the parole board had "considered the appropriate factors", and that the parole rejection was not the result of any impropriety or failure to comply with the requirements of N.Y. Executive Law § 259-i.  *Farid v. Travis*, 17 A.D.3d 754, 792 N.Y.S.2d 258 (3d Dep't 2005); *see also* Defendants' Motion (Dkt. No. 32) Exh. 6.  Plaintiff's subsequent appeal of that determination to the New York State Court of Appeals was dismissed on the basis that no constitutional question was directly presented.  *Farid v. Travis*, 5 N.Y.3d 782, 801 N.Y.S.2d 801 (2005) (Table); *see* Defendants' Motion (Dkt. No. 32) Exh. 9.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 8, 2005.  Dkt. No. 1.  Named as defendants in Farid's complaint are the New York State Board of Parole; BOP Chair Robert Dennison; and BOP Commissioners Daizzee

Bouey, Vanessa A. Clarke, Marietta Gailor, George Johnson, Debra Loomis, William Smith, Jr., Patricia Tappan, and R. Guy Vizzie, Jr.  *Id.*  In his complaint, plaintiff asserts various federal statutory and constitutional claims, alleging that 1) defendants denied him the right to due process and equal protection, in violation of the Fourteenth Amendment to the United States Constitution; 2) defendants' actions were in violation of the *ex post facto* clause, U.S. Const. Art. 1, § 10, cl. 1; 3) by their actions defendants exposed him to double jeopardy, in contravention of the Fifth Amendment; 4) defendants conspired to deprive him of his civil rights, in violation of 42 U.S.C. § 1985(2) and (3); and 5) defendant discriminated against him on the basis of a disability, in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12100 *et seq.*

Upon routine review of plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis*, on April 3, 2006 District Judge Gary L. Sharpe issued a decision and order in which, *inter alia,* he found plaintiff's complaint to be lacking in merit, and thus denied plaintiff's IFP application and ordered its dismissal.[3]  Dkt. No. 6.   By subsequent

---

[3]      That review was performed both pursuant to 28 U.S.C. § 1915(e)(2)(B), which authorizes dismissal of an *in forma pauperis* proceeding on various grounds

decision and order, issued on December 20, 2006, District Judge Sharpe reconsidered his *sua sponte* dismissal and, while making no findings regarding the merits of Farid's claims, ordered the action reopened and conferred IFP status upon the plaintiff.[4]  Dkt. No. 9.

In response to plaintiff's complaint, on March 9, 2007 defendants interposed a motion seeking dismissal of all or some of the claims contained within it on a variety of bases.  Dkt. No. 32.  In their motion, defendants argue that 1) plaintiff's claims are precluded by *res judicata* or collateral estoppel, based upon the unfavorable disposition of his state court Article 78 petition; 2) all or some of plaintiff's claims are precluded by the Eleventh Amendment; 3) plaintiff's claims against defendants Bouey, Gailor, Loomis and Tappan are time-barred; 4) defendants are absolutely immune from suit or, at a minimum, entitled to qualified, good faith immunity; 5) plaintiff's claim of entitlement to equitable relief is precluded under 42 U.S.C. § 1983; 6) plaintiff's complaint fails to establish a violation

---

including, *inter alia*, a finding that it fails to state a claim upon which relief may be granted, as well as under 28 U.S.C. § 1915A, which requires court review of a complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency.

      [4]    In that order, Judge Sharpe also denied an application by plaintiff for transfer of this action to the Southern District of New York to "be consolidated and joined with" a similar action brought by another inmate, *Graziano v. Pataki,* No. 06 CIV. 0480, 2006 WL 2023082 (S.D.N.Y. Jul. 17, 2006).  Dkt. No. 9, *slip op.* at 1.

of either the ADA or the Rehabilitation Act; 7) regardless of the relative

merits of those claims, plaintiff's ADA and Rehabilitation Act claims may

not proceed against the BOP Commissioners in their individual capacities;

and 8) plaintiff's constitutional claims lack merit in light of the fact that in

New York, inmates have no cognizable liberty interest in being granted

parole. *Id.* Plaintiff subsequently responded in opposition to defendants'

motion, Dkt. No. 35, and additionally on May 16, 2007, moved to strike

defendants' dismissal motion pursuant to Rule 12(f) of the Federal Rules

of Civil Procedure, arguing that it was improperly filed and should be

summarily rejected by the court.  Dkt. No. 37.  Plaintiff has also moved

seeking leave to supplement his complaint to assert claims arising from

post-commencement occurrences including, principally, another parole

denial, and to add, as defendants, Larry McQuinn, the Senior Parole

Officer at the Franklin Correctional Facility ("Franklin"); Joel Kissane, a

Parole Officer at Franklin; and Alan J. Croce, Lisa Beth Elovich, and

Patrick Gallivan, three additional BOP Commissioners.  Dkt. No. 39.

Defendants have since responded in opposition to plaintiff's motion for

leave to supplement his complaint and add additional defendants.  Dkt.

No. 40.

The parties' motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[5]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Plaintiff's Motion to Strike

In response to defendants' motion, plaintiff has sought an order striking the motion.  In his application to strike, plaintiff complains that defendants have not identified the portion of Rule 12(b) upon which their motion is predicated, have failed to include an affidavit among their motion papers, and have impermissibly offered matters outside of the record.

Plaintiff's motion to strike is bottomed on Rule 12(f) of the Federal Rules of Civil Procedure.  That rule provides that

> [t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after

---

[5]    Plaintiff's motion for leave to file a supplemental complaint and to add defendants, and potentially his motion to strike, would ordinarily fall within my non-consenual jurisdiction pursuant to 28 U.S.C. § 636(b)(1)(A); *see also* Northern District of New York General Order No. 25, as implicating only non-dispositive matters.  In light of the procedural posture of this case, however, I am formatting my decision as a report and recommendation in its entirety, including with respect to those motions.

being served with the pleading.

Fed. R. Civ. P. 12(f).  As its plain language suggests, the rule is not particularly well-suited to the apparent objective of plaintiff's motion – the striking of defendants' motion altogether.  Plaintiff's motion does, however, nonetheless request relief which squarely lies within the inherent authority of the court, and therefore will be considered.  *See WWP, Inc. v. Wounded Warriors, Inc.*, No. 8:07CV370, 2008 WL 150234, at *1 (D. Neb. Jan. 14, 2008) (acknowledging court's inherent authority to strike inappropriate matter in affidavits, briefs and motions); *MacCormack v. City of Prairie Village, KS*, No. CIV. A. 00-2405, 2001 WL 58838, at *6 (D. Kan. Jan. 17, 2001) (recognizing the court's inherent power to control proceedings before it in deeming *pro se* plaintiff's filing to be a motion to strike defendant's submission).

While defendants' notice of motion does not specify a particular subdivision of Rule 12(b) under which the dismissal application is made, I have construed it as having been based upon the contention that for a variety of reasons, plaintiff's complaint fails to state a claim upon which relief may be granted, thus implicating Rule 12(b)(6).  Since such a motion tests the legal sufficiency of a complaint, neither this court's local rules nor

12

the Federal Rules of Civil Procedure require, or indeed even permit, the

submission of an affidavit asserting facts in support of the motion absent

its conversion by the court to one seeking the entry of summary

judgment.[6]  *See* Fed. R. Civ. P. 12(d);  N.D.N.Y.L.R. 7.1(a)(2); *see also*

*Doe v. Gonzales*, 500 F. Supp. 2d 379, 296 (S.D.N.Y. 2007) (citing *Friedl*

*v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).

It is true, as plaintiff argues, that ordinarily materials outside of the

record are not appropriately considered on a dismissal motion, absent

such a conversion of the motion.  *See Friedl*, 210 F.3d at 83.  This rule,

while generally applicable in this instance, does not preclude

consideration of documents attached to or specifically referenced in a

party's complaint, nor does it require that when ruling upon a dismissal

motion a court disregard materials, including notably court decisions, of

which it may properly take judicial notice.  *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 152-53 (2d Cir. 2002); *Brass v. American Film Tech., Inc.*,

987 F.2d 142, 150 (2d Cir. 1993); *see also Pani v. Empire Blue Cross Blue*

*Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district

court may rely on matters of public record in deciding a motion to dismiss

---

[6]      The standard under which a Rule 12(b)(6) motion is gauged is discussed
further on in this report.  *See* pp. 14-17, *post.*

13

under Rule 12(b)(6), including case law and statutes.") (citations omitted).

Since the materials attached to defendants' motion are comprised of documents relating to plaintiff's Article 78 petition, including court records and decisions associated with that state court proceeding, they are properly considered by the court. *See Pani*, 152 F.3d at 75; *see also*, *e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of related district court decision); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 n.3 (2d Cir. 2000) (taking judicial notice of California state court decision). Accordingly, I recommend that plaintiff's motion to strike be denied.

B.    Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not

14

required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim.  *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d

292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint

under Rule 12(b)(6) is substantial; the question presented by such a

motion is not whether the plaintiff is likely ultimately to prevail, "'but

whether the claimant is entitled to offer evidence to support the claims.'"

*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d

435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69

F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)).  Accordingly, a

complaint should be dismissed on a motion brought pursuant to Rule

12(b)(6) only where the plaintiff has failed to provide some basis for the

allegations that support the elements of his or her claim.  *See Twombly*,

127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12,

(2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint

must plead 'enough facts to state a claim for relief that is plausible on its

face.'") (quoting *Twombly*).  "While *Twombly* does not require heightened

fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (3d Cir. 2007) (quoting *Twombly*, 127 S.

16

Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

      C.    Res Judicata/Collateral Estoppel

Relying upon decisions of both the lower state court and the Third Department associated with plaintiff's Article 78 proceeding challenging

his parole denial, in their motion defendants argue that his claims in this action are precluded by *res judicata* or, alternatively, collateral estoppel. At a minimum, defendants maintain, plaintiff is bound by the Appellate Division's finding that in denying his request for parole the BOP panel "considered the appropriate factors" and that the decision was not a result of impropriety or the panel's failure to comply with the requisite provisions of state law.

Both the Full Faith and Credit Clause of the United States Constitution, *see* U.S. Const. art. IV, § 1, and the corresponding Full Faith and Credit statute, 28 U.S.C. § 1738, require that a federal court accord a state court judgment the same preclusive effect which it would merit under the law of the state from which it originated. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); *Kremer Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883, 1889-90 (1982); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). This principle applies fully to claims brought pursuant to 42 U.S.C. § 1983. *Migra*, 465 U.S. at 84-85, 104 S. Ct. at 897-98; *Allen v. McCurry*, 449 U.S. 90, 103-04, 101 S. Ct. 411, 419-20 (1980); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996). Since the underlying state court determination

18

at issue in this case originated in New York, the law of that state controls

in determining the extent of the preclusive effect of which the Article 78

determination in response to Farid's petition is deserving.[7]  *Giakoumelos*,

88 F.3d at 59; *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280,

286 (2d Cir. 2002); *LaFleur v. Whitman*, 300 F.3d 256, 271-72 (2d Cir.

2002).

> 1.    Claim Preclusion

As the Second Circuit explained in *Marvel*, claim preclusion, also

known as *res judicata*, requires that a final judgment on the merits of an

action be given preclusive effect, barring parties as well as those in privity

with them from relitigating in a subsequent action a claim which was or

could have been raised in the prior suit.  *Marvel*, 310 F.3d at 286-87; *see*

*also Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 28 (2d Cir. 1986)

(citing, *inter alia*, *Migra*), *overruled on other grounds, Taylor v. Vermont*

*Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002).

In this case it is clear, based upon well-established case authority,

---

[7]      While the law of New York, rather than federal principles, applies to
determine the preclusive effect to be given to the state courts' determinations in
response to plaintiff's Article 78 petition, this is a distinction without a difference since,
as the Second Circuit has noted, "there is no discernable difference between federal
and New York law concerning *res judicata* and collateral estoppel."  *Marvel Characters,*
*Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pike v. Freeman,* 266 F.3d 78,
90 n.14 (2d Cir. 2001)).

that the prior unfavorable Article 78 determination did not serve to foreclose the plaintiff from commencing this subsequent section 1983 civil rights action for damages, since such relief is unavailable in an Article 78 proceeding.  *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *Allen v. Coughlin*, No. 92 Civ. 6137, 1995 WL 117718, at *3 (S.D.N.Y. Mar. 17, 1995).  Accordingly, plaintiff's claims for damages in this section 1983 action are not barred by *res judicata* based upon decisions rendered in the prior Article 78 proceeding, even assuming that all of the requirements for claim preclusion are otherwise met.

    2.    <u>Issue Preclusion</u>

Issue preclusion, a more narrow doctrine often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has been decided against that party or its privy.  *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007); *Marvel*, 310 F.3d at 288-89.  Under New York law, in order for issue preclusion to apply two elements must be established; first, the issue must both "actually and necessarily" have been decided in a prior proceeding, and secondly, the party against whom the doctrine is being urged must have been afforded a full and fair opportunity to litigate

20

the issue in the first proceeding.  *McKithen*, 481 F.3d at 105; *see also*

*Giakoumelos*, 88 F.3d at 59; *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.

1995).

In his initial determination addressing plaintiff's Article 78 petition,

Supreme Court Justice Bernard J. Malone found that the BOP

Commissioners who entertained Farid's parole application in April of 2003

"consider[ed] many of the relevant statutory factors", and in that process of

deciding whether to grant parole the panel's conduct "[did] not disclose

'irrationality bordering on impropriety.'" Defendants' Motion (Dkt. No. 32)

Exh. 3, *slip. op* at 3.  The court further concluded that the BOP panel

"exercised independent discretion in denying petitioner parole release and

was not simply implementing a policy of the Governer . . . ."[8]  *Id.* (citation

omitted).  When affirming that determination, the Third Department found

that the BOP had considered the appropriate factors in arriving at its

determination.[9]  *Id.,* Exh. 6, *slip op.* at 2.  These determinations are

---

[8]    In his decision, Supreme Court Justice Malone also rejected petitioner's
other arguments as lacking in merit.  Defendants' Motion (Dkt. No. 32) Exh. 3, *slip op.*
at 3.  The claims rejected under this catchall language, though not specifically
mentioned in the court's decision, were based upon Farid's assertion that his due
process and equal protection rights under the state and federal constitutions were
abridged.

[9]    Among the factors properly considered, according to the Third
Department, were "the violent nature of petitioner's crimes, involving the shooting

entitled to preclusive effect, and plaintiff accordingly is barred from

relitigating in this court the issues decided by the state courts, including

the propriety of his parole denial, plaintiff's claim of due process

deprivation and equal protection denial, and his *ex post facto* argument,

as set forth in his first three causes of action.

      D.    <u>Absolute Immunity</u>

      In their motion, defendants maintain that BOP Chairperson

Dennison, as well as Commissioners Bouey, Clarke, Johnson, Loomis,

Tappan, Vizzie, Gailor, Smith and Johnson, are entitled to absolute

immunity from suit.  Defendants' argument in this regard derives from the

quasi-judicial nature of the function which they perform as parole

commissioners, and is based principally upon the Second Circuit's

decision in *Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999).

      "The Second Circuit [has] . . . held that Parole Board officials are

entitled to absolute immunity from liability for damages under § 1983 for

their decisions to grant, deny, or revoke parole."  *Barna v. Travis*, No.  97

CV 1146, 1999 WL 305515, at *2 (N.D.N.Y. Apr. 22, 1999), *aff'd,* 239 F.3d

_____

death of the victim outside a New York City discotheque as well as the attempted
shooting of a police officer, but also petitioner's criminal history, prison disciplinary
record, educational accomplishments, program participation and release plans."
Defendants' Motion (Dkt. No. 32) Exh. 6, *slip op.* at 2.

169 (2d Cir. 2001) (citing *Montero*, 171 F.3d at 760). In order to enjoy such absolute immunity, parole officials must have been engaged in the performance of an adjudicative function when taking the action under challenge. *Montero*, 171 F.3d at 760. Parole board officials are provided absolute immunity when performing judicial functions in order to foster and ensure preservation of the impartiality of decision making, and to save such officials the time and expense of defending numerous baseless suits from disappointed inmates. *Id.* at 760-61.

Plaintiff's allegations against the various BOP Commissioners in this instance represent nothing more than poorly disguised claims that in performing their official functions, they deprived him of his constitutional rights. As such, they are precisely the type of claims to which the absolute immunity steadfastly recognized by the courts is applicable. *See Montero*, 171 F.3d 757 at 761. I therefore recommend dismissal of all damage claims against the Parole Board defendants on the independent basis of absolute immunity, based upon their function carried out while engaged in the conduct forming the basis for plaintiff's claims.

Plaintiff could perhaps argue that although absolute immunity precludes him from maintaining damage claims against the defendants,

for performing their official functions as BOP Commissioners, he is nonetheless entitled to seek injunctive relief against them.  In his complaint, plaintiff has sought declaratory and injunctive relief, in addition to monetary damages, requesting, *inter alia,* that the defendants and their agents be enjoined "from continuing to violate any of the constitutional rights enumerated and found to be in violation in the course of proceedings before the BOP and the BOPAU . . ." Complaint (Dkt. No. 1) ¶ 82(J).  In their motion, defendants respond that such relief is unavailable under section 1983.

In 1996 Congress adopted the Federal Courts Improvement Act of 1976, Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996).  Section 309(c) of that Act amended 42 U.S.C. § 1983 to add the provision "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."  Federal Courts Improvement Act of 1976, § 309(c); *see LeDuc v. Tilley,* No. 3:05CV157, 2005 WL1475334, at *7 (D. Conn. June 22, 2005).

Although the provision of section 1983, as amended, implicated by this portion of defendants' motion makes reference only to judicial officers,

for much the same reason that parole board members are ordinarily entitled to absolute immunity based upon the quasi-adjudicatory function which they perform, so too are they entitled to the benefit of this provision precluding the issuance of injunctive relief in most circumstances. *See Montero*, 171 F.3d at 761. And, since plaintiff has neither alleged a violation of a federal decree nor demonstrated the unavailability of declaratory relief, his claim for injunctive relief in this action is therefore barred under section 1983. *See id.*

In sum, in light of the immunity which they enjoy from both suits for damages and in defense of claims for injunctive relief such as those now asserted by the plaintiff, I recommend dismissal of all of plaintiff's claims against the BOP and its Commissioners on this independent basis, separate and apart from the merits.

E.   Eleventh Amendment

The individual defendants in this action, as BOP members, are all state employees. Plaintiff's complaint is ambiguous on the issue of whether they are sued individually, in their official capacities, or both. Since plaintiff's complaint seeks various legal and equitable relief, including monetary damages, in their motion defendants urge dismissal of

25

plaintiff's damage claims against the defendants in their official capacities, based upon protection afforded under the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[10] *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)). "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[11]

---

[10]    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

[11]    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).   Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend this portion of defendants' motion be granted, and that plaintiff's damage claim against the defendants *qua* state officials be dismissed.

     F.    <u>Statute of Limitations</u>

Defendants next seek dismissal of plaintiff's claims against defendants Bouey, Gailor, Loomis and Tappan, based upon the governing statute of limitations.  Defendants' motion in this regard is premised upon their assertion that those BOP Commissioners are named only in connection with the consideration of plaintiff's application for parole in 2001.

Consistent with the Supreme Court's pronouncement that in actions brought under 42 U.S.C. § 1983 the applicable limitations period is derived from the general or residual statute of limitations for personal injury

actions under the laws of the forum state, *see Owens v. Okure,* 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989), plaintiff's claim in this action is governed by the three-year statute of limitations which applies in New York to personal injury claims of an otherwise unspecified nature.  *See* N.Y. C.P.L.R. § 214(5); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens*); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing *Pinaud* and *Owens*).  For purposes of gauging the timeliness of his claims, I have deemed plaintiff's complaint in this action to have been filed on November 28, 2005.[12]  Plaintiff's claims are thus untimely unless found to have accrued on or after November 28, 2002.

Despite the fact that state statutes of limitation, which often vary in length from jurisdiction to jurisdiction, apply to such federal claims, the determination of the proper accrual date to affix in connection with a

---

[12]     While plaintiff's complaint was not formally filed with the court until December 8, 2005, Dkt. No. 1, it is dated November 28, 2005.  Affording plaintiff the benefit of the doubt, I have therefore treated the action as having been commenced on that earlier date, applying the prison mailbox rule recognized in this circuit and elsewhere as controlling for purposes of measuring a statute of limitations in an action brought by a prison inmate, *see Houston v. Lack,* 487 U.S. 266, 270-76, 108 S. Ct. 2379, 2382-85 (1988); *Jones v. Waterbury Police Dep't*, No. 04CV2137, 2005 WL 1185723, at *2 (D. Conn. May 12, 2005).

section 1983 claim is controlled by federal law.  *Ormiston*, 117 F.3d at 71.

Such a claim accrues when the plaintiff "'knows or has reason to know of

the injury which is the basis of his [or her] action.'"  *Singleton v. City of*

*New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotations and

citation omitted), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981).

It is readily apparent, even from plaintiff's own account, that by 2001

he was well aware of the parole denial forming the sole basis for his

claims against defendants Bouey, Gailor, Loomis and Tappan.  Since

plaintiff's claims against them occurred more than three years prior to the

date on which this action is deemed to have been commenced, those

defendants are therefore entitled to dismissal of plaintiff's claims against

them on the additional basis of the applicable statute of limitations.[13]

---

[13]      Although not raised by the plaintiff, I have considered the possibility that the statute of limitations should be considered as having been tolled during the pendency of his Article 78 proceeding.  While federal law determines when a section 1983 claim accrues, state tolling principles inform the analysis of whether the limitations period has been tolled, unless those rules would "'defeat the goals'" of section 1983.  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2000 (1989)).  Under New York law, there is no tolling while a litigant pursues related but independent causes of action.  *See Board of Regents v. Tomanio*, 446 U.S. 478, 484-87, 100 S. Ct. 1790, 1795-96 (1980).  Accordingly, a plaintiff's pursuit of a state remedy, such as through the commencement of an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983.  *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (citing *Meyer v. Frank*, 550 F.2d 726, 728-730 (2d Cir. 1977) and *Williams v. Walsh*, 558 F.2d 667, 673 (2d Cir. 1977)).  The court has also considered, but found no basis to find, the applicability of equitable tolling in this instance.

G.    Procedural Due Process Claim

Chief among plaintiff's claims in this action is the contention that

during the course of the proceedings leading to the various parole denials,

he was deprived of procedural due process.  Asserting that as a matter of

law the plaintiff cannot maintain such a claim, in view of the lack of any

cognizable liberty or property interest of the plaintiff in being granted

parole, defendants seek dismissal of plaintiff's due process cause of

action.

To successfully state a claim under 42 U.S.C. § 1983 for denial of

due process, a plaintiff must show that he or she 1) possessed an actual

liberty interest, and 2) was deprived of that interest without being afforded

sufficient process.  *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000)

(citations omitted); *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998);

*Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  "[T]he first

inquiry in the analysis of an alleged due process violation is whether there

exists a protected liberty interest" which is at stake in the case.  *Barna*,

1999 WL 305515, at *1 (citing *Kentucky Dep't of Corrs. v. Thompson*, 490

U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

In a case such as this, the burden initially rests with the plaintiff to

show that he or she enjoys a protected liberty interest under New York's statutory parole scheme.  While the presence or absence of language in a state's parole provisions mandating release was once regarded as dispositive on this score, *see, e.g. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11-13, 99 S. Ct. 2100, 2106-07 (1979), the Supreme Court has more recently held that the focus of the inquiry should be on the nature of the interest allegedly created by the state.  *Sandin v. Conner*, 515 U.S. 472, 479-83, 115 S. Ct. 2293, 2298-2300 (1995).

Analysis of the plaintiff's due process claim, at least in the first instance, therefore hinges upon whether New York's parole regime confers upon him a legitimate expectation in release on parole prior to the expiration of his sentence. Careful review of New York's parole provisions reveals no basis to find the existence of such a protected liberty interest in being released on parole.  *Barna*, 1999 WL 305515, at *2; *see also Larocco v. New York State Div. of Parole*, No. 9:05-CV-1602, 2006 WL 1313341, at *2 (N.D.N.Y. May 12, 2006) (McAvoy, S.J.).  N.Y. Executive Law § 259-i(2)(c), the statute which governs the parole process, affords broad discretion to the BOP in determining whether to grant or deny an

inmate's application for early release.  For this reason, the Second Circuit

has recognized that the New York state parole process creates no

legitimate expectation of release mandating that an inmate seeking

release be afforded the full panoply of procedural due process protection.

*Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see Morel v. Thomas*,

No. 02 CV 9622, 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003).  As

that court has succinctly noted, "[n]either of the mere possibility of release.

. . nor a statistical probability of release . . . gives rise to a legitimate

expectancy of release on parole" sufficient to support a due process claim.

*Barna,* 239 F.3d at 170-71 (citations omitted).

    This is not to say that a prison inmate may constitutionally be denied

parole for purely arbitrary or otherwise impermissible reasons.  *Boddie v.*

*New York State Div. of Parole*, 288 F. Supp. 2d 431, 440 (S.D.N.Y. 2003).

 To the contrary, the courts have recognized a limited due process right of

New York inmates not to be denied parole for reasons which are arbitrary

or capricious, or based on a protected classification or irrational

distinction.  *See Standley v. Dennison*, No. 9:05-CV-1033, 2007 WL

2406909, at *9 (N.D.N.Y. Aug. 21, 2007) (Sharpe, D.J.) (collecting cases);

*see also see also Graziano v. Pataki*, No. 06 Civ. 0480, 2006 WL 3082, at

32

*7-9  (S.D.N.Y. July 17, 2006) (holding that prison inmates do not have a

constitutional right to release on parole, but recognizing "a due process

right to have the decision made only in accordance with the statutory

criteria" specified by state law.)

In this instance the plaintiff argues that the BOP acted irrationally in

considering the circumstances of his criminal conviction among the factors

weighed in arriving at their determination.  New York law directs the BOP

to consider certain specified factors, among them being the underlying

offense, but does not specify the weight to be attached to each factor.

N.Y. Exec. Law § 259-i(2)(c)(A); *Mitchell v. Conway*, No. 04 CV 1088,

2006 WL 508086, at *4 (E.D.N.Y. Mar. 1, 2006).  That section specifically

provides that

> [d]iscretionary release on parole shall not be
> granted merely as a reward for good conduct or
> efficient performance of duties while confined but
> after considering if there is a reasonable probability
> that, if such inmate is released, he will live and
> remain at liberty without violating the law, and that
> his release is not incompatible with the welfare of
> society and will not so deprecate the seriousness
> of his crime as to undermine respect for law.

N.Y. Exec. Law § 259-i(2)(C)(A) (McKinney's, 2007).  Accordingly, "[t]he

parole board may in its discretion find that any one of these factors,

*including the severity of the inmate's offense of conviction,* outweighs the other factors in a particular case and is grounds to deny parole." *Mitchell*, 2006 WL 508086, at *4 (emphasis added)*.

Under these circumstances, even if plaintiff's claims were not barred by issue preclusion as a result of the adverse Article 78 determination from the state courts, his due process claim nonetheless would fail based upon his inability to establish the deprivation of a cognizable liberty interest. *Larocco,* 2006 WL 1313341, at *3. This is true particularly in view of the state courts' finding that in denying Farid's application for parole, the BOP relied upon appropriate factors, and thus its decision cannot fairly be characterized as capricious.

H.    Equal Protection Claim

Plaintiff's complaint also sets forth a claim for deprivation of equal protection. Although somewhat vague in this regard, plaintiff's complaint appears to allege that as a violent offender, he has been treated differently than non-violent offenders for parole purposes and that this disparity in treatment offends the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff's equal protection cause of action is patently lacking in merit

34

for two reasons.  Initially, the claim hinges upon plaintiff's ability to

demonstrate that violent felony offenders are similarly situated to non-

violent offenders, a proposition which, unfortunately for the plaintiff, has

been soundly rejected by the courts.  *See Standley,* 2007 WL 2406909, at

*13 (collecting cases).  More significantly, as many courts have

recognized, distinguishing between these two groups, for purposes of

parole determinations, is "entirely appropriate and not at all invidious."

*Parks v. Edwards,* No. 03-CV-5588, 2004 WL 377658, at *4 (E.D.N.Y.

Mar. 1, 2004); *Standley*, 2007 WL 2406909, at *13.  Plaintiff's equal

protection claim is therefore similarly lacking in merit.

      I.    *Ex Post Facto* Claim

     Also included within plaintiff's complaint is a claim that institution by

the BOP of a policy, allegedly at the behest of former New York Governor

George Pataki, not to grant parole to violent felony offenders,

implemented after his sentencing and applied retroactively to his

circumstances, represents a violation of his rights under the *ex post facto*

provision of the United States Constitution.

     Among the protections afforded by the Constitution is the prohibition

against a state passing any *ex post facto* law.  See U.S. Const. art. I, § 10.

35

Under this provision, laws which "retroactively alter the definition of crimes or increase the punishment for criminal acts" are prohibited.  *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S. Ct. 2715, 2719-20 (1990); *see also Barna*, 1999 WL 305515, at *3.

The type of retroactive legislation proscribed under that provision is readily and materially distinguishable from the plaintiff's circumstances.  In this instance both the defendant's potential exposure to criminal sanctions and his sentence remained constant before and after his conviction, and were not impacted by intervening events occurring after his trial and sentencing.  What Farid now challenges is the alleged implementation of a policy, following his sentencing, which would potentially negate or minimize the possibility of early release on parole, without actually increasing his maximum exposure to punishment.  In recognition of this critical distinction the argument now being raised has been firmly rejected by several other courts, including the Second Circuit, particularly since the challenged policy is neither a law, nor does it have the effect of retroactively punishing a crime.  *Barna*, 239 F.3d at 171; *Parks*, 2004 WL 377658, at *4.  As the Second Circuit has noted, "[t]he *Ex Post Facto* Clause does not apply to guidelines that do not create mandatory rules for

release but are promulgated simply to guide the parole board in the exercise of its discretion. . . . Such guidelines 'are not 'laws' within the meaning of the ex post facto clause.'"  *Barna*, 239 F.3d at 171 (citing and quoting *DiNapoli v. Northeast Regional Parole Comm'n*, 764 F.2d 143, 145-47 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S. Ct. 568 (1985)).

Plaintiff's *ex post facto* clause argument is therefore lacking in merit.

J.    Double Jeopardy Claim

Included within plaintiff's fourth cause of action is a reference to a claimed violation of the double jeopardy provision of the Fifth Amendment. Neither plaintiff's complaint nor his memorandum in opposition to defendants' dismissal motion, however, elaborates as to the basis for this claim.

The double jeopardy clause of the Fifth Amendment protects an individual's right not to be "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V, cl. 2.  The double jeopardy clause prohibits both the second prosecution of a defendant for the same offense after an acquittal or a conviction and the imposition of multiple punishments for the same offense.  *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), *overruled on other grounds*,

*Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989).   Regarding

cumulative sentences imposed in a single trial, the double jeopardy

clause, however, "does no more than prevent the sentencing court from

prescribing greater punishment than the legislature intended."  *Missouri v.*

*Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678 (1983).

It is difficult to discern, based upon the circumstances now

presented, how plaintiff's conviction and sentence, coupled with the denial

of his application for release prior to the end of his sentence, could result

in abridgment of his right against double jeopardy.  In the event that the

BOP persists in its rejection of plaintiff's efforts to gain release on parole,

he will have served the sentences which were duly imposed in connection

with his two criminal convictions.  Under these circumstances I find no

plausible double jeopardy claim included within his complaint and

therefore recommend dismissal of that portion of his fourth cause of

action.

     K.    <u>Cruel and Unusual Punishment Claim</u>

Also embedded within plaintiff's fourth cause of action is a claim that

his Eighth Amendment right to be free from cruel and unusual punishment

has been violated by virtue of defendants' actions.  In their motion,

defendants also seek dismissal of this claim.

The Eighth Amendment contains a general proscription against cruel and unusual punishment.[14]  In cases decided principally under 28 U.S.C. § 2254, in response to requests by state prisoners for habeas intervention, the courts have uniformly observed that state imposed sentences which fall within the prescribed ranges of penalties for the crimes of conviction do not implicate the cruel and unusual punishment provision of the Eighth Amendment.  *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F. Supp. 2d 332, 343-44.  Plaintiff has not demonstrated any facts which would require a different result and suggest that in this instance he has been subjected to cruel and unusual punishment, even assuming the continued denial of his request for release on parole prior to the expiration of his sentences.  Accordingly, I recommend the portion of his fourth cause of action which alleges cruel and unusual punishment be dismissed as well.

L.     Conspiracy Claims

---

[14]     That amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

39

In his fifth cause of action, plaintiff asserts a claim of conspiracy in violation of 42 U.S.C. § 1985(3).[15],[16]  Defendants maintain that plaintiffs' conspiracy claim is not legally cognizable, both based upon the intra-agency conspiracy doctrine, which precludes such claims against officers, agents, or employees of a single corporate entity, and because the elements of a conspiracy claim under section 1985 have not been properly pleaded.

### 1.   Intra-agency Conspiracy Doctrine

In a doctrine rooted in the conspiracy provision of section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which, although developed in the context of business entities, since inception has been expanded to apply to business corporations and public entities as well, the intra-

---

[15]     That section provides, in relevant part, that

> [i]f two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[16]     Plaintiff's complaint also alleges a conspiracy under 42 U.S.C. § 1985(2). That section, however, which deals with obstruction of justice and intimidation of parties, witnesses and jurors, does not appear to have applicability in plaintiff's circumstances.

40

corporate conspiracy doctrine provides that with exceptions not now

presented, an entity cannot conspire with one or more of its employees,

acting within the scope of employment, and thus a conspiracy claim

conceptually will not lie in such circumstances.  *See, e.g., Everson v. New

York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002);

*Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:05CV1453, 2005

WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).  In this

instance plaintiff alleges that the New York State Board of Parole and the

various individual BOP Commissioners named conspired to deprive him of

his civil rights.  Since those conspiracy claims are asserted against the

BOP and its officers, agents or employees, each acting within the scope of

his or her employment, they are precluded by virtue of the intra-corporate

conspiracy doctrine.  *Little v. City of New York,* 487 F. Supp. 2d 426, 441-

42 (S.D.N.Y. 2007) (citations omitted).

     2.    <u>Merits</u>

     In their motion defendants also assert plaintiff's conspiracy claims do

not meet the requirements of section 1985(3), in that he fails to allege that

he was the victim of a conspiracy based upon his membership in a

protected class and defendants' class-based, invidiously discriminatory

animus.

To sustain a cause of action for conspiracy to violate civil rights under section 1985(3), a plaintiff must allege and demonstrate that defendants acted with racial or other class based animus in conspiring to deprive the plaintiff of his or her equal protection of the laws, or of equal privileges and immunity secured by law.  *United Brotherhood of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39, 103 S. Ct. 3352, 3359-61 (1983); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir. 1994); *Gleason v. McBride*, 869 F.2d 688, 694 (2d Cir. 1989); *Patterson v. County of Oneida*, No. 00-CV-1940, 2002 WL 31677033, at *4 (N.D.N.Y. 2002) (Hurd, J.), *aff'd in relevant part*, 375 F.3d 206 (2d Cir. 2004); *Benson v. United States*, 969 F. Supp. 1129, 1135-36 (N.D. Ill. 1997) (citing, *inter alia*, *United Brotherhood*); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995).  A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can in the alternative be evidenced circumstantially, through a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'"  *LeBlanc-Sternberry*, 67 F.3d at 427 (quoting *United States v. Rubin,* 844 F.2d 979, 984 (2d

42

Cir.1988)).  This notwithstanding, in order to properly plead such a claim,
a plaintiff must make more than "conclusory, vague, or general allegations
of conspiracy."  *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) (per
curiam); *Williams v. Reilly*, 743 F. Supp. 168, 173 (S.D.N.Y. 1990)
("[u]nsubstantiated, conclusory, vague or general allegations of a
conspiracy to deprive constitutional rights are not enough to survive [even]
a motion to dismiss").  "[D]iffuse and expansive allegations are insufficient,
unless amplified by specific instances of misconduct."  *Ciambriello v.
County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v.
City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff's complaint in this case is wholly devoid of specifics in
connection with his conspiracy claims, aside from the assertion, in purely
conclusory terms, that the defendants have conspired to violate his civil
rights.  Additionally, plaintiff's complaint lacks any allegation regarding
race-based animus or his membership in a suspect class providing
motivation for the defendants' parole denial.  Accordingly, I find plaintiff's
section 1985(3) cause of action is subject to dismissal on the merits, even
assuming inapplicability of the intra-corporate conspiracy doctrine.  *Boddie
v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Flaherty v.
Coughlin*, 713 F.3d 10, 13 (2d Cir. 1983)).

M.    Plaintiff's ADA and Rehabilitation Act Claims

Advancing upon an extremely inventive argument, plaintiff's sixth

and seventh causes of action assert that by their actions defendants have

violated his rights under section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794(a), and the Americans With Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq.*  Complaint (Dkt. No. 1) ¶¶ 80-81.  Plaintiff's

argument in this regard is based upon his assertion that by making

reference to his "antisocial lifestyle" when denying his April, 2003

application for parole, defendants discriminated against him as a result of

a recognized disability.  Defendants seek dismissal of plaintiff's ADA and

Rehabilitation claims on a variety of grounds.

1.    Individual Capacity Suits Under the ADA
              and Section 504

Defendants initially seek dismissal of plaintiff's ADA and

Rehabilitation Act claims against them in their individual capacities as a

matter of law.[17]  As defendants correctly argue, neither Title II of the ADA

nor section 504 of the Rehabilitation Act makes provision for individual

---

[17]    Although this is far from readily apparent, plaintiff's complaint appears to
assert claims, including under the ADA and section 504 of the Rehabilitation Act,
against the named defendants, both individually and in their official capacities as BOP
Commissioners.  Defendants' motion seeks dismissal of plaintiff's ADA and section 504
claims against the defendants only in their individual capacities.

44

capacity suits against state officials.  *Garcia v. SUNY Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *see also Shariff v. Coombe,* No. 96 Civ. 3001, 2002 WL 1392164, at *2 (S.D.N.Y. June 26, 2002). Accordingly, plaintiff's sixth and seventh causes of action are subject to dismissal to the extent they are asserted against the defendants in their individual capacities.[18]

### 2.    Merits of ADA and Section 504 Claims

Defendants also challenge the sufficiency of plaintiff's section 504 and ADA claims on the merits.  Reiterating that New York State prison inmates have no right or legitimate expectation to be released on parole prior to the expiration of an imposed sentence, defendants assert that plaintiff is unable to identify a service or benefit to which he was entitled, but denied, and further has failed to allege the existence of a cognizable disability forming the basis for defendants' actions.

In 1990 Congress enacted the ADA pursuant to the Commerce

---

[18]    While this issue by no means has been uncontroversial, it appears that plaintiff may maintain damage claims under the ADA and section 504 against the defendants in their official capacities.  *See Warren v. Goord,* No. 99 CV 296, 2006 WL 1582385, at *11-12 (W.D.N.Y. May 26, 2006); *Doe v. Goord,* No. 04 CV 0570, 2004 WL 2829876, at *14-16 (S.D.N.Y. Dec. 10, 2004); *see also Garcia*, 280 F.3d at 112-13.

Clause of the United States Constitution, as well as under section five of

the Fourteenth Amendment.  *Garcia*, 280 F.3d at 108; *Alsbrook*, 184 F.3d

at 1006 (citing 42 U.S.C. § 12101(b)(4)); *see also Pennsylvania Dep't of*

*Corrs. v. Yeskey,* 524 U.S. 206, 212, 118 S. Ct. 1952, 1956 (1998).  Title II

of the Act prohibits exclusion of a qualified individual with a disability "from

participation in or [denial of the] benefits of the services, programs, or

activities of a public entity, or [from being subjected to] discrimination by

any such entity", 42 U.S.C. § 12132, and extends its coverage to prisons

operated by the states.  *Yeskey,* 524 U.S. at 213, 118 S. Ct. at 1956.

Section 504 of the Rehabilitation Act, which significantly predates

the ADA, provides, in relevant part, that

> [n]o otherwise qualified individual with a disability. .
> . shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination under
> any program or activity receiving Federal financial
> assistance . . . .

29 U.S.C. § 794(a).  Section 504 was enacted by Congress under

authority of the Spending Clause contained within Article I of the

Constitution.  *See Garcia*, 280 F.3d at 113; *see also Doe*, 2004 WL

2829876, at *16.  Provided that the jurisdictional predicate of receipt of

financial assistance is met, section 504 of the Rehabilitation Act offers

46

essentially the same protections to those with disabilities as does Title II of the ADA.  *Garcia*, 280 F.3d at 113 (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)).

In order to succeed, claims under both Title II of the ADA and section 504 of the Rehabilitation Act require, as a threshold matter, a showing that the plaintiff suffers from a disability.  *Doe*, 2004 WL 2829876, at *17; *see also Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146-47 (2d Cir. 2002); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). For purposes of those two provisions, the definition of disability is essentially co-extensive.  52 U.S.C. § 12102(2); *accord*, 29 U.S.C. § 705(20)(B); *see also Doe*, 2004 WL 2829876, at *17 n. 34.  To establish disability under either provision, a plaintiff must demonstrate that he or she 1) suffers from a physical or mental impairment which 2) substantially limits a major life activity.  *Weixel*, 287 F.3d at 147; *Doe*, 2004 WL 2829876, at *17; *see also* 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B).

In his complaint, plaintiff has failed to identify a cognizable disability from which he suffers, and which substantially limits a major life activity. Rather than claiming to suffer from a cognizable disability within the meaning of the ADA and section 504, plaintiff appears to be relying upon discrimination on the basis of a perceived disability.  His pleading,

47

however, fails to illuminate how his perceived disability – an antisocial lifestyle – substantially limits any major life activity.[19]

In should be noted, in any event, that the contention that defendants' denial of parole application in April of 2003 was motivated by consideration of a perceived disability is dispelled by the state court determination on plaintiff's Article 78 petition, in which both the trial court and the Third Department concluded that various relevant circumstances were factored into the parole denial.  Moreover, to the extent that Farid's antisocial lifestyle was considered by the BOP when rejecting plaintiff's request for release on parole, it was entirely appropriate to include that factor into the parole decision, and neither the ADA nor the Rehabilitation Act is offended by consideration by such a highly relevant factor.  *See*, *e.g.*, *Mitchell v. Metrish*, No. 04-CV-72411, 2005 WL 2397031, at *6 (E.D. Mich. Sept. 28, 2005) (rejecting claims under Title II of the ADA and the Rehabilitation Act articulated in petitioner's habeas corpus application

---

[19]    While the definition of a disabled individual under the ADA includes a person regarded as having a physical or mental impairment substantially limiting one or more major life activities, that definition section appears to apply only to disability discrimination in the employment setting under Title I of the ADA, and discrimination based upon a perceived disability is not similarly actionable under Title II in a setting such as that now at issue.  42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(a)-(f), (l) (indicating that this definition of a perceived disability applies to employers and other covered entities under Title I, such as employment agencies).  The same does not appear to hold true, however, with respect to section 504.  *See* 45 C.F.R. § 84.3(j)(2)(iv)(C).

where parole board considered petitioner's prior substance abuse, in addition to a variety of other factors, including the nature of the crime, in denying him parole); *see also Prater v. Caruso*, No. 05-cv-105, 2006 WL 2882350, at *1 (W.D. Mich. Oct. 5, 2006) (determining that where a parole board has considered many factors, including the nature of the crime and the prisoner's attitude toward the crime, and concluded that a prisoner is not qualified for parole, he or she is not considered a "qualified individual" under the ADA or the Rehabilitation Act).

Under these circumstances, I recommend dismissal of plaintiff's ADA and Rehabilitation Act claims on the merits.

### N.   Plaintiff's Motion For Leave To Supplement

In addition to opposing defendants' motion and additionally seeking to have it stricken, plaintiff also moves for permission to supplement his complaint. Dkt. No. 39. In his motion, plaintiff seeks to add additional defendants, including Larry McQuin, a Senior Parole officer at Franklin; Joel Kissane, also a Parole Officer at Franklin; and BOP Commissioners Alan J. Croce, Lisa Elovich, and Patrick Gallivan. *Id.* In his proposed supplemental complaint plaintiff attempts to add claims related to the procedures leading up to and resulting in a parole denial on August 9, 2006, as well as subsequent proceedings during the latter part of 2006

49

and earlier this year.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted based upon the procedural circumstances of the case – something which is not applicable in this action – a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[20]  Fed. R. Civ. P. 15(a).  Under Rule 15(a), leave to amend ordinarily should be freely granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility.  *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Elma R.T. v. Landesmann Int'l Mktg. Corp.,* No. 98-CIV.-662, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman*).

Notwithstanding the familiar and well-accepted precept that leave to amend should be granted freely and is typically permitted, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion then permitting amendment would be an act

---

[20]     Although plaintiff's motion seeks leave to supplement his complaint, analysis of such motions is informed generally by the same considerations that apply to motions for leave to amend.  *Amaker v. Haponik*, 198 F.R.D. 386, 389 (S.D.N.Y. 2000) (citing *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)).

50

of futility which should not be sanctioned.  *See, e.g., Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 124 (E.D.N.Y. 1996); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).  If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend.  *Saxholm*, 938 F. Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1029 (S.D.N.Y. 1995) and *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)).

Generally, while a delay in making a motion to amend the pleadings must be weighed as a factor in deciding whether or not to grant the motion, the delay by itself will not be reason to deny the motion.  *Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y.1996) (Hurd, J.).  A court must weigh good cause shown for the delay in seeking leave against dilatoriness of the moving party, resulting in last minute surprise and inability of opposing counsel to address the issue.  *Id.*  In addressing prejudice to the nonmoving party, the longer the period of unexplained delay, the less that will be required of the nonmoving party in terms of a showing of prejudice.  *Id.*

51

There are several considerations which militate against granting plaintiff's motion to supplement – principal among them is futility.  For the reasons set forth above the new claims interposed in plaintiff's proposed supplemental complaint, which parallel those contained in his existing pleading, are futile and would be subject to dismissal for failure to state a cause of action upon which relief may be granted.  Moreover, in the event that this report and the recommendation included within it are adopted, the case will be closed.  Under these circumstances I find it would be improvident to permit the requested supplementation, and therefore recommend that plaintiff's motion for leave to supplement be denied. *Cancel v. Mazzuca*, 2002 WL 1891395, at *5-6 (S.D.N.Y. Aug. 15, 2002) (denying plaintiff's motion to amend and supplement civil rights complaint to add defendants previously dismissed, as well as new claims, because such additions would be futile).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action, although multi-faceted, in essence challenges a denial of his application for early release on parole in April of 2003, alleging that in denying him parole the BOP was impermissibly influenced by a statewide policy against granting parole to violent felony offenders.  That parole decision, rendered by a panel of BOP

Commissioners, has been upheld both on internal review within the agency, and following a challenge by the plaintiff in the New York courts. Many of plaintiff's claims in this action are accordingly barred as a result of the adverse determination in connection with his state court challenge.

Addressing the merits of plaintiff's claims, I find that they are subject to dismissal on a variety of bases including, *inter alia,* the absolute immunity enjoyed by the defendants when engaged in their decision-making task, the fact that plaintiff has no legal entitlement to parole sufficient to give rise to claims, plaintiff's failure to plead the necessary elements of a conspiracy claim under 42 U.S.C. § 1985(3), and his inability to establish that he suffers from a cognizable disability sufficient to trigger the protections of the ADA and section 504 of the Rehabilitation Act.[21]   It is therefore hereby

RECOMMENDED, that plaintiff's motion to strike (Dkt. No. 37) defendants' dismissal motion, be DENIED; and it is further

RECOMMENDED, that defendants' motion to dismiss plaintiff's complaint in this action (Dkt. No. 32) be GRANTED, and that plaintiff's complaint be dismissed in its entirety as against all defendants; it is further

---

[21]      In light of my recommendation in this matter I have not addressed the defense of qualified immunity, offered by the defendants as an independent basis for dismissal of plaintiff's claims.  *Saucier v. Katz,* 533 U.S. 194, 121, S. Ct. 2151 (2001).

53

RECOMMENDED that plaintiff's motion for leave to supplement his complaint (Dkt. No. 39) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:      February 4, 2008
            Syracuse, NY



David E. Peebles
U.S. Magistrate Judge